IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | |
|---|---|
| Vincent Harris, | Case No.: 9:23-cv-2539-JD-MHC |
| Plaintiff, | |
| vs. | ORDER AND OPINION |
| Steve Mueller, Paul Ackerson, and John Lewis, | |
| Defendants. | |

This matter is before the Court with the Report and Recommendation ("Report") of United States Magistrate Judge Molly H. Cherry (DE 47), made in accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) of the District of South Carolina regarding Defendants Steve Mueller,[1] Paul Ackerson,[2] and John Lewis's[3] (collectively "Defendants") Motion for Summary Judgment (DE 22).[4]

---

[1]    Plaintiff asserts that Defendant Mueller is responsible by virtue of his position as Sheriff of Cherokee County. (DE 1 at 2, 4.)

[2]    The correct spelling of this Defendant's surname is "Akerson," not "Ackerson." (See DE 22-2 at 2.)

[3]    Plaintiff refers to Defendant Lewis as "John" (See DE 1 at 3); however, in his Affidavit, Defendant Lewis identifies his given name as "Tristan." (See DE 22-3 at 2–3.)

[4]    The recommendation has no presumptive weight, and the responsibility for making a final determination remains with the United States District Court. See Mathews v. Weber, 423 U.S. 261, 270-71 (1976). The court is charged with making a de novo determination of those portions of the Report and Recommendation to which specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the magistrate judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

1

A. Background

The Report sets forth the relevant facts and legal standards, which the Court incorporates without a complete recitation. In any event, the Court provides this summary as a brief background.

Plaintiff, a pretrial detainee at the Cherokee County Detention Center ("CCDC"), asserts that on December 18, 2022, he was approached by two CCDC officers, specifically Defendants Ackerson and Lewis ("Detention Center Defendants"), regarding an incident in which he was seen on camera allegedly smoking marijuana. (DE 36-2, ¶ 2; DE 1, at 7.) Though Plaintiff denied smoking marijuana, he complied with the Detention Center Defendants' orders to pack up his belongings to move to a different cell in C-Max. (DE 36-2, ¶ 3.)

According to Plaintiff, while walking to the new cell in C-Max, he fell and hit his head because of a medical condition—orthostatic hypotension. (Id. ¶ 4; DE 35 at 2.) Plaintiff states that his medical condition makes it difficult for him to stand on his own and that he was wearing a Detention Center-approved medical alert bracelet stating his medical condition and that he was prone to falling. (DE 36-2, ¶¶ 4, 6.) Plaintiff could not get up and stand on his own after he fell. (Id. ¶¶ 4, 7.) The Detention Center Defendants ordered him to get up, and Plaintiff explained that he could not and needed help. (Id. ¶ 7.) He claims that the Detention Center Defendants disregarded his statements and dragged him to and threw him in the new cell in C-Max when he could not get up on his own. (Id. ¶¶ 4, 7.) Plaintiff also claims that he told the Detention Center Defendants that they were hurting him during the

2

incident, but that they responded, "we don't give a [f**k] about you or your medical condition." (Id. ¶ 8.)

Plaintiff was then housed in C-Max for about fifteen to twenty days, after which he was moved to Delta Unit, where he was "housed on the top tier[,] forcing him to navigate a high flight of metal and concrete steps" which he claims imposed a difficulty on him due to his medical condition. (DE 1, at 5–6.) Plaintiff also asserts he fell while using the stairs sometime during his housing in Delta Unit. (DE 35, at 4.) Plaintiff claims that the Detention Center Defendants, knowing of his disorder, failed to provide him adequate medical care for his disorder or for being dragged and thrown into a new cell. (DE 36-2, at ¶¶ 5, 8, 10–11.) He states he has developed anxiety and suffers from emotional distress because of the incident. (DE 1, at 9.) Plaintiff requests monetary damages of $1 million per Defendant and requests that "all officers involved be relieved of their duties." (Id.)

On April 22, 2024, Defendants moved for summary judgment on five grounds: 1) the allegations of Harris's Complaint do not rise to the level of a constitutional deprivation for denial of medical care and/or deliberate indifference; 2) Harris has not suffered a constitutional deprivation with reference to being placed in C-Max; 3) there is no personal involvement to give rise to any claim against Sheriff Mueller; 4) there is no evidence to establish supervisory liability under Section 1983; and 5) Defendants are entitled to qualified immunity. (DE 22.)

On April 24, 2024, under Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the Magistrate Judge advised Harris of the motion for summary judgment procedure

3

and the possible consequences if he failed to respond adequately. (DE 23.) Harris opposed the motion (DE 36), and Defendants replied (DE 40).

B. Report and Recommendation

On November 22, 2024, the Magistrate Judge issued the Report recommending that Defendants' motion for summary judgment be granted, in part, as to his constitutional deprivation for denial of medical care and/or deliberate indifference, a constitutional deprivation with reference to being placed in C-Max, all claims against Sheriff Mueller, and supervisory liability under Section 1983. (DE 47.) However, the Report recommended denial of summary judgment for Harris's excessive force claim and any qualified immunity defense related to excessive force. (Id.) The Report found as to Harris's claims against Sheriff Mueller:

> The law is clear that personal participation of a defendant is a necessary element of a § 1983 claim against a government employee in his personal capacity. See Williamson, 912 F.3d at 171; Wilcox, 877 F.3d at 170. Plaintiff has failed to produce evidence establishing Defendant Mueller's personal involvement in actions related to deliberate indifference, excessive force, or other constitutional violations asserted by Plaintiff. Cf. ECF No. 36-2 (not mentioning Mueller in Affidavit).

(DE 47 at 6-7.)

As for Harris's deliberate indifference claim, the Report found that even assuming Plaintiff's orthostatic hypertension or his susceptibility to falling constitutes a serious medical condition meeting the first element for a deliberate indifference claim, Harris has not established the remaining elements, i.e., "that (2) the Detention Center Defendants intentionally, knowingly, or recklessly acted or failed to act to appropriately address the risk that orthostatic hypertension or the

4

propensity to falling posed; (3) the Detention Center Defendants knew or should have known (a) that Plaintiff had orthostatic hypertension or the propensity to falling and (b) that the Detention Center Defendant's own action or inaction posed an unjustifiably high risk of harm; and (4) as a result, Plaintiff was harmed." (DE 47 at 10-11.) Specifically, the Report states:

> To the extent Plaintiff is asserting a claim based on lack of medical attention after his fall, from being dragged and thrown into his cell or otherwise, see ECF No. 36-2 at ¶ 11, Plaintiff has not demonstrated, or even alleged, what medical care he needed or was entitled to have that was denied by the Detention Center Defendants.[] To be sure, Plaintiff avers that he hit his head when he fell. See ECF No. 35 at 2. However, Plaintiff's fall, on its own, does not demonstrate any particularized harm, or injury. Further, Plaintiff is unable to demonstrate that the fall, dragging, or resulting harm stemmed from a lack of medical attention by the Detention Center Defendants. See Short, 87 F.4th at 611.

(Id. at 12.) As for Defendant's housing in Delta Unit, where he was forced to use stairs even though his medical conditions make him susceptible to falling, the Report states:

> Plaintiff has not shown that Defendants 'failed to act to appropriately address the risk that the [propensity to falling] posed' regarding his housing in the upper tier of Delta Unit. See Short, 87 F.4th at 611."
> (Id.) First, Plaintiff fails to demonstrate any personal involvement by Defendants in the housing decision. See Williamson, 912 F.3d at 171 (requiring the officials' own individual actions must violate the Constitution in order to establish personal liability under § 1983). Plaintiff does not allege or show that any Defendant had any personal role in moving Plaintiff to Delta Unit. See ECF Nos. 1 at 5 (stating Plaintiff was moved to Delta Unit approximately fifteen to twenty days after being placed in C-Max Unit); 35 at 3 (referring to the person forcing him to use stairs as an officer rather than a named Defendant).

5

(Id.) On June 10, 2024, Plaintiff objected to the Report.[5] (DE 49.)

C. Legal Standard

To be actionable, objections to the Report and Recommendation must be specific. Failure to file specific objections constitutes a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the district judge. See United States v. Schronce, 727 F.2d 91, 94 & n.4 (4th Cir. 1984). "The Supreme Court has expressly upheld the validity of such a waiver rule, explaining that 'the filing of objections to a magistrate's report enables the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute.'" Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (2005) (citing Thomas v. Arn, 474 U.S. 140, 147 (1985) (emphasis added)). In the absence of specific objections to the Report and Recommendation of the magistrate judge, this Court is not required to give any explanation for adopting the recommendation. See Camby v. Davis, 718 F.2d 198, 199 (4th Cir. 1983).

D. Plaintiff's Objection

Harris's objection centers on his deliberate indifference claim. Harris states:

> Plaintiff has submitted prima facie evidence in his sworn Affidavits showing that he was wearing a medical alert bracelet which was in plain view of the defendants. [I]t (sic) is true that the defendants are not health care providers or medical personnel. However, as County Detention Center employees, they are required to be trained in first aid and first responder assistance.

---

[5]   The Court notes Harris purported to file a Supplemental Objection on December 27, 2024. (DE 50.) However, this objection is beyond the time for filing an objection and Harris did not seek leave to supplement his objection. Nevertheless, the Court finds that the supplemental response does not affect the outcome of this Order.

(DE 49 at 1.) Once the movant has made this threshold demonstration, to survive the motion for summary judgment, under Rule 56(e), the nonmoving party must "go beyond the pleadings and by h[is] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). Under this standard, "the mere existence of a scintilla of evidence" in favor of the non-movant's position is insufficient to withstand the summary judgment motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). "Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion." Wai Man Tom v. Hosp. Ventures LLC, 980 F.3d 1027, 1037 (4th Cir. 2020).

Here, Plaintiff claims that he was diagnosed with orthostatic hypotension, but he presents no medical record to that effect. He has also presented no evidence to indicate that there was any indicated treatment directed by a physician that was not provided. He simply references that he was wearing a bracelet that said he was a fall risk. That does not give rise to an inference that the Plaintiff was diagnosed with any serious medical condition and/or that the Plaintiff had been diagnosed with orthostatic hypotension. Plaintiff also presents no evidence and points to no fact from which it can be inferred that he had and/or suffered any other physical injury and/or medical condition that mandated treatment, and thus nothing that would amount to

7

a serious medical need. Accordingly, Harris's objection does not satisfy Rule 56(e).[6] Thus, the Court overrules Harris's objection.

E. Conclusion

Accordingly, after a thorough review of the Report and Recommendation and the record in this case, the Court adopts the Report (DE 47) and incorporates it here by reference.

It is, therefore, ORDERED that Defendants' motion for summary judgment (DE 22) is denied as to Plaintiff's excessive force claim and granted on all remaining claims.

IT IS SO ORDERED.

Joseph Dawson, III
United States District Judge

Florence, South Carolina
January 7, 2025

NOTICE OF RIGHT TO APPEAL

The parties are hereby notified of the right to appeal this order within thirty (30) days from this date under Rules 3 and 4 of the Federal Rules of Appellate Procedure.

---

[6] Since Harris's claim for deliberate indifference fails as a matter of law, the Court declines to address the qualified immunity objection as it relates to this claim.